**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, ) | |
| ) | |
| Plaintiff, ) | Civil Case No. 1:18-cv-01425-RCL |
| ) | |
| v. ) | |
| ) | |
| JOHN DOE subscriber assigned IP address ) | |
| 73.180.154.14, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

i

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................................1

II. FACTS ...................................................................................................................................2

    A. Plaintiff is a Victim of Rampant Copyright Infringement Perpetrated Through The Use of BitTorrent ...................................................................................................................2

    B. Plaintiff Brings Its Litigation in Good Faith ....................................................................3

III. ARGUMENT .........................................................................................................................4

    A. Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant ..........................................................................................................................4

    B. There Is Good Cause for this Court to Grant Plaintiff's Motion for Leave to Serve Its Subpoena Because Defendant's Identity is Necessary to Effectuate Service ....................5

    C. This Court Has Personal Jurisdiction Over Doe Defendant .............................................6

    D. Protective Order ................................................................................................................8

IV. CONCLUSION ......................................................................................................................8

# TABLE OF AUTHORITITES

**Cases**

*AF Holdings LLC v. Cox Commc'ns Inc.*, 752 F.3d 990, 996 (D.C. Cir. 2014)............................7
*AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 996 (D.C. Cir. 2014) ......................................6
*Arista Records LLC v. Does 1–19*, 551 F.Supp.2d 1, 6 (D.D.C.2008)..................................... 4, 5
*\*Arista Records, LLC v. Doe 3,* 604 F.3d 110 (2d Cir. 2010) ........................................................4
*Axel Braun Prods. v. Does 1-2, 823*, No. CV 11-56 EGS/JMF,
   2012 WL 177856 (D.D.C. Jan. 19, 2012)..................................................................................5
*Call of the Wild Movie, LLC v. Does 1-1,062*,
   770 F. Supp. 2d 332, 352–53 (D.D.C. 2011) ............................................................................5
*Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir. 1998)...........................................................................5
*Exquisite Multimedia, Inc. v. Does 1–336,* No CV. 11–1976,
   2012 WL 177885 (D.D.C. Jan. 19, 2012)..................................................................................5
*Malibu Media, LLC v. Doe*, 2016 WL 4444799 (E.D.N.Y. Aug. 23, 2016).................................7
*Malibu Media, LLC v. Doe*, No. CV 13-1941 (EGS/JMF),
   2014 WL 25195 (D.D.C. Jan. 2, 2014) .....................................................................................7
*Malibu Media, LLC v. Doe*, No. CV 15-986 (RDM),
   2015 WL 5173890 (D.D.C. Sept. 2, 2015)............................................................................ 4, 5
*Malibu Media, LLC v. Doe*, No. CV 16-00639 (RC/AK), 2016 WL 1698263 (D.D.C. Apr. 27,
   2016)..................................................................................................................................... 4, 6
*\*Malibu Media, LLC v. John Doe,* 177 F. Supp. 3d 554, 556 (D.D.C. 2016) ....................... 5, 6, 7
*Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 41 (D.D.C. 2011) ................................ 6, 7
*Patrick Collins, Inc. v. Does 1-72*, No. CV 11-58 RMU/JMF,
   2012 WL 177864 (D.D.C. Jan. 19, 2012)..................................................................................5
*Stabilisierungsfonds Fur Wein v. Kaiser*, 647 F.2d 200, 207 (D.C. Cir. 1981) .............................7
*Strike 3 Holdings, LLC v. John Doe*, No. CV 3:17-1680 CSH,
   2017 WL 5001474 (D. Conn. Nov. 1, 2017) ............................................................................5
*W. Coast Prods., Inc. v. Does 1-1,434*, 280 F.R.D. 73, 74 (D.D.C. 2012) .....................................5

**Other Authorities**

Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The
   Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United
   States House Of Representatives, (January 2011) at
   http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-
   11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-
   pornography-and-other-internet-crimes.pdf ..............................................................................2

**Rules**

Fed. R. Civ. P. 26(d)(1).............................................................................................................. 1, 4

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff hereby respectfully submits this Memorandum of Points and Authorities in support of its Motion for Leave to serve a third-party subpoena prior to a Rule 26(f) conference.

### I. INTRODUCTION

Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") is the owner of original, award winning motion pictures featured on its brand's subscription-based adult websites.[1] Unfortunately, Strike 3's success has led users on the Internet to illegally infringe its works on a very large scale. Indeed, Strike 3's motion pictures are among the most infringed content in the world. *See* Declaration of Greg Lansky, attached hereto as Exhibit "A."[2]

Strike 3 hired an investigator, IPP International U.G., to monitor and detect the infringement of Strike 3's content. IPP discovered that Defendant's IP address was illegally distributing several of Strike 3's motion pictures. Strike 3's independent forensic expert, Philip Pasquale reviewed the evidence captured by IPP and confirmed that Defendant's IP address was involved in an infringing transaction at the exact date and time reported by IPP. *See generally* Declaration of Philip Pasquale, Exhibit "C." Strike 3 only knows Defendant by his or her IP address. This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only party with the information necessary to identify Defendant by correlating the IP address with John Doe's identity. As a result, Plaintiff now seeks leave to serve limited, immediate discovery on Defendant's ISP, Comcast Cable Communications, LLC

---

[1] *See generally* Declaration of Greg Lansky, attached hereto as Exhibit "A."
[2] *See also* Dylan Love, *The Most-Pirated Man in Porn Is Getting Angry*, INVERSE (May 24, 2017), https://www.inverse.com/article/31350-greg-lansky-tushy-blacked-vixen-interview.

(Comcast Cable) so that Plaintiff may learn Defendant's identity, investigate Defendant's role in the infringement, and effectuate service.  Further impelling expediency, Defendant's ISP only maintains the internal logs of the requested information for a brief period of time.[3]

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP.  This subpoena will only demand the true name and address of Defendant.  Plaintiff will only use this information to prosecute the claims made in its Complaint.  Without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit and protect its copyrights.

## II.   FACTS

### A.   Plaintiff is a Victim of Rampant Copyright Infringement Perpetrated Through The Use of BitTorrent

Greg Lansky ("Mr. Lansky") is a member of General Media Systems, LLC, ("GMS") the parent company that owns Strike 3.  *See* Exhibit "A" at ¶ 1.  Strike 3 owns the intellectual property to the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands, including the copyrights to each of the motion pictures distributed through the brands' sites and the trademarks to each of the brand names and logos.  *Id*. at ¶ 3.  Strike 3 is owned entirely by Mr. Lansky's company, GMS, and has existed since 2015.  *Id*.

Mr. Lansky is the Chief Creative Officer of the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands.  *Id*. at ¶ 1.  In 2006, Mr. Lansky moved to the United States from Paris to pursue his dream of creating art in an adult context.  *Id*. at ¶ 4.  He has always been passionate about photography and cinematography.  *Id*.

---

[3] *See, e.g.*, Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

It was a difficult start – Mr. Lansky could barely speak English, and he had trouble making connections and finding employment. *Id*. at ¶ 5. Eventually, after tremendous hard work, Mr. Lansky was fortunate to be hired by some of the biggest adult brands in the world. *Id*. at ¶ 6. Through these experiences, Mr. Lansky was able to establish himself and become an expert in the field. *Id*.

In 2013, Mr. Lansky decided to risk everything to create his own company and studio. *Id*. at ¶ 7. After a few years, his brands turned into a multi-million dollar a year business. *Id*. at ¶ 10. His philosophy is to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality adult films. *Id*. at ¶¶ 12–13. Moreover, Strike 3's motion pictures are known for having the highest production budget of any in the industry. *Id*. at ¶ 15.

Because of this, Strike 3's brand's websites have a subscriber base that is one of the highest of any adult sites in the world, with 20 million unique visitors to its websites per month, and these websites enjoy a loyal following. *Id*. at ¶ 10. Strike 3 is also currently the number one seller of adult DVDs in the United States. *Id*. at ¶ 17. Finally, Strike 3's content is licensed throughout the world, including by most major cable networks. *Id*. at ¶ 18. This success has led to numerous awards being bestowed upon Strike 3, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography." *Id*. at ¶ 19. Mr. Lansky himself has also won "director of the year" three years in a row. *Id.*

Unfortunately, piracy is a major threat and causes tremendous damage to Strike 3. As Mr. Lansky succinctly puts it, Strike 3 "can compete in the industry, but we cannot compete when our content is stolen." *Id*. at ¶ 22. To continue to provide value for members, exciting and

inspiring projects for adult performers, and to continue to create top paying jobs and growth in the adult community, Strike 3 must protect its copyrights.  *Id*. at ¶ 29.

   B.  <u>Plaintiff Brings Its Litigation in Good Faith</u>

Strike 3 is mindful of the nature of the litigation and its goal is to not embarrass anyone or force anyone to settle unwillingly, especially anyone that is innocent.  *Id.* at ¶ 28.  Therefore, Strike 3 files only strong cases against extreme infringers.  *Id.* at ¶ 29.  Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but are also large scale unauthorized distributors of Strike 3's content.  *Id.*  All defendants within the Strike 3 litigation have distributed, at a minimum, at least 15% of Strike 3's entire copyrighted library.  *Id.*  Moreover, Strike 3 does not seek settlements unless initiated by defendant or defendant's counsel.  *Id.* at ¶ 30.  Furthermore, Strike 3 does not send demand letters nor make any attempt to contact a defendant prior to service of the Complaint.  *Id.*  Thus, Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so. Id. at ¶ 31.  Strike 3 is a successful adult entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses.  *Id.* at ¶ 32.  This litigation, or any litigation instituted by Strike 3, is not a business model.  *Id.*  Instead, Strike 3's goal is to deter piracy and redirect the infringement back into legitimate sales.  *Id.*  Proceeds that Strike 3 receives from settlements go back into making the company whole, including investing in better pay for artists and performers, better quality productions, and hiring and providing benefits for employees.  *Id.*

**III.**   **ARGUMENT**

   A.  <u>Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant</u>

Cases such as this one are the paradigm for when leave to conduct pre-Rule 26(f) conference discovery should be allowed.  "Pursuant to Rule 26(f) of the Federal Rules of Civil

Procedure, although '[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f),' the party may do so 'when authorized ... by court order.'" *Malibu Media, LLC v. Doe*, No. CV 16-00639 (RC/AK), 2016 WL 1698263, at *1 (D.D.C. Apr. 27, 2016) (citing Fed. R. Civ. P. 26(d)(1)).  The Court uses a "good cause standard"[4] when determining "whether to authorize discovery prior to a Rule 26(f) conference." *Malibu Media*, No. CV 15-986 (RDM), 2015 WL 5173890 at *1 (citation omitted). "Good cause to take discovery prior to the Rule 26(f) conference exists where the discovery is necessary 'before the suit can progress further.'" *Id.* (quoting *Arista Records LLC v. Does 1–19,* 551 F.Supp.2d 1, 6 (D.D.C. 2008) (quotation marks and brackets omitted)).

Additionally, since Plaintiff's Motion for Leave "is in essence seeking jurisdictional discovery," Plaintiff "must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Malibu Media, LLC v. John Doe,* 177 F. Supp. 3d 554, 556 (D.D.C. 2016) (citing *Exquisite Multimedia, Inc. v. Does 1– 336,* No. 11–1976, 2012 WL 177885, at *1 (D.D.C. Jan. 19, 2012)).[5]

B. <u>There Is Good Cause for this Court to Grant Plaintiff's Motion for Leave to Serve Its Subpoena Because Defendant's Identity is Necessary to Effectuate Service</u>

Good cause exists here, because discovery is necessary for Plaintiff to proceed with its copyright infringement lawsuit.  "Defendant must be identified before this suit can progress

---

[4] While other jurisdiction have used a five-factor analysis to determine good cause, *see Arista Records, LLC v. Doe 3,* 604 F.3d 110 (2d Cir. 2010), this Court has rejected this test as "premature" at this stage and more appropriately suited for a motion to quash. *See Malibu Media, LLC v. Doe*, No. CV 15-986 (RDM), 2015 WL 5173890, at *2 n.1 (D.D.C. Sept. 2, 2015). "For the purposes of this Memorandum Opinion—which merely allows Plaintiff to propound discovery requests earlier than usual—it is sufficient for Plaintiff to show that the litigation cannot proceed absent the requested discovery and that Plaintiff has a good faith belief this Court has personal jurisdiction over Defendant." *Id.*

[5] *See e.g., W. Coast Prods., Inc. v. Does 1-1,434,* 280 F.R.D. 73, 74 (D.D.C. 2012); *accord Axel Braun Prods. v. Does 1-2, 823,* No. CV 11-56 EGS/JMF, 2012 WL 177856, at *2 (D.D.C. Jan. 19, 2012); *Patrick Collins, Inc. v. Does 1-72*, No. CV 11-58 RMU/JMF, 2012 WL 177864, at *2 (D.D.C. Jan. 19, 2012).

further." *Id.* at 557 (citing *Arista Records LLC v. Does 1–19*, 551 F.Supp.2d 1, 6 (D.D.C.2008)). "Defendant's ISP . . . is the only entity that can correlate the IP address to its subscriber and identify Defendant as the person assigned the IP address . . . during the time of the alleged infringement." *Strike 3 Holdings v. John Doe*, No. CV 3:17-1680 (CSH), 2017 WL 5001474, at *4 (D. Conn. Nov. 1, 2017). "Without this information from the ISPs, the plaintiffs cannot name and serve those whom they allege to have infringed upon their copyrights." *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 352–53 (D.D.C. 2011). "Indeed, it is questionable whether the Court could dismiss the case without allowing Plaintiff the opportunity for discovery of Defendant's identity." *Malibu Media*, No. CV 15-986 (RDM), 2015 WL 5173890 at *1 (citing *Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir. 1998) (noting "courts have rejected the dismissal of suits against unnamed defendants . . . until the plaintiff has had some opportunity for discovery to learn [the defendants'] identities").

    C.  This Court Has Personal Jurisdiction Over Doe Defendant

"In cases where the Plaintiff seeks the defendants' identifying information through an ISP, the Plaintiff must request discovery in the judicial districts in which such defendants are located." *Malibu Media, LLC v. Doe*, No. CV 16-00639 (RC/AK), 2016 WL 1698263, at *2 (D.D.C. Apr. 27, 2016). Plaintiff used Maxmind's geolocation technology to trace Defendant's IP address to a physical location within this district. *See* Complaint at ¶¶ 8–9. The Court of Appeals for the District of Columbia has held that this technique is "sufficiently accurate" to establish situs. *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 996 (D.C. Cir. 2014) (finding geolocaiton technologies "enable anyone to estimate the location of Internet users based on their IP addresses"); *see also Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 41 (D.D.C. 2011) ("[W]hile these geolocation services are not 100% accurate, these services can place a user no farther away than a city that borders the user's actual location . . . ."). Having established

Defendant's physical presence, the only remaining issue is under what mechanism this Court may properly exercise its jurisdiction.

"District of Columbia law provides for the exercise of personal jurisdiction over a person domiciled in the District of Columbia as to 'any claim for relief.'" *Malibu Media*, 177 F. Supp. 3d at 556 (quoting D.C. Code § 13–422 (2001)). The District's long-arm-statute states, in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
> . . .
> (3) causing tortious injury in the District of Columbia by an act or omission in the
>
> District of Columbia;

*Id.* (quoting D.C. Code § 13–423 (2001)). "It is well settled in this jurisdiction that a claim for copyright infringement sounds in tort." *W. Coast Prods., Inc. v. Does 1-1,434*, 280 F.R.D. 73, 74 n.2 (D.D.C. 2012) (citing *Nu Image*, 799 F.Supp.2d at 38 n.3) (citing *Stabilisierungsfonds Fur Wein v. Kaiser*, 647 F.2d 200, 207 (D.C. Cir. 1981)).

"Personal jurisdiction might properly be exercised over Defendant John Doe if he or she is a resident of the District of Columbia or at least downloaded the copyrighted work in the District." *Malibu Media*, 177 F. Supp. 3d at 557 (citing *AF Holdings LLC v. Cox Commc'ns Inc.*, 752 F.3d 990, 996 (D.C. Cir. 2014)). "Thus, unless the infringer is domiciled in the District of Columbia, the question presented is where the infringement occurred and whether it occurred in the District of Columbia." *Id.* The Complaint alleges both: based on its use of geolocation technology, Plaintiff has a good faith basis to believe that Doe Defendant is a resident of the District of Columbia, or in the alternative, if this not the case, that at a minimum, a substantial portion of Defendant's infringement ("tortious injury") took place within the District. *See* Complaint at ¶ 9. This Court has found analogous pleadings sufficient in the past. *See generally*

*Malibu Media*, 177 F. Supp. 3d.[6] As a result, Plaintiff has established good cause for this Court to take leave and allow early discovery into the identity of Doe Defendant.

    D. <u>Protective Order</u>

In some BitTorrent cases involving adult content, courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed anonymously. *See e.g.*, *Malibu Media, LLC v. Doe*, 2016 WL 4444799, at *2 (E.D.N.Y. Aug. 23, 2016) ("[T]he Court issued a Protective Order governing the manner in which such information would be disclosed.")  Strike 3 respectfully encourages the Court to establish such procedures here, should the Court find it appropriate.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to Plaintiff to issue a Rule 45 subpoena to Defendant's ISP.

Dated: 08/28/2018

                                                          Respectfully submitted,

                                                          By:  /s/ *Jessica Haire*
                                                          Jessica Haire, Esq.
                                                          jhaire@foxrothschild.com
                                                          Bar No. 1011695
                                                          Fox Rothschild LLP
                                                          1030 15th Street, NW
                                                          Suite 380 East
                                                          Washington, DC 20005
                                                          Tel.: (202) 461-3100
                                                          Fax: (202) 461-3102
                                                          www.foxrothschild.com

---

[6] For similar reasons, the Complaint also sufficiently establishes that venue is proper in this case. *See* Complaint at ¶ 10; *see Malibu Media, LLC v. Doe*, No. CV 13-1941 (EGS/JMF), 2014 WL 25195, at *1 (D.D.C. Jan. 2, 2014) (satisfying the concerns Judge Facciola raised in *W. Coast Prods* by using reliable geolocation technology tracing the infringements to a physical address in this Court's jurisdiction).